UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**TAMIA BRAGG,**

        **Plaintiff,**        **CIVIL ACTION NO. 10-cv-12055**

  **vs.**

                        **DISTRICT JUDGE VICTORIA A. ROBERTS**

**COMMISSIONER OF**      **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 1, 14) be GRANTED in part, Defendant's Motion For Summary Judgment (docket no. 15) be DENIED and the instant matter remanded for further consideration.

\*\*\*

**II.    PROCEDURAL HISTORY:**

Plaintiff filed an application for Supplemental Security Income (SSI) with a protective filing date of July 31, 2005 alleging that she had been disabled since January 1, 2000 due to a mental impairment. (TR 44-46, 78, 237). The Social Security Administration denied benefits. (TR 36-40). Administrative Law Judge John L. Christensen (ALJ) held a de novo hearing on July 23, 2008 and in a decision dated September 5, 2008 found that the claimant was not entitled to Supplemental Security Income because she was not under a disability within the meaning of the Social Security Act at any time since July 31, 2005. (TR 11-18, 225). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 2-4). The parties

filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record. Although Plaintiff was represented at the administrative hearing and in filing her appeal with the Appeals Council, Plaintiff appears pro se before this Court. (TR 6-7, 27-31). The Court is mindful that it is required to construe Plaintiff's pro se pleadings liberally, and hold them to "less stringent standards than formal pleadings drafted by lawyers." *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court will treat the issues raised in Plaintiff's Petition and Response To Order To Show Cause as Plaintiff's Motion For Summary Judgment and perform a review of the denial of SSI. 42 U.S.C. § 405(g).

### III.  TESTIMONY AND RECORD EVIDENCE

Plaintiff was 31 years old at the time of the hearing. (TR 232). Plaintiff has a seventh grade education and testified that she can read and write. (TR 233). Plaintiff testified that she last worked in 1997 or 1998 for about two months on an assembly line and as a home health aide for one year. (TR 234). She stopped being a health aide when the individual she was caring for died. She testified that she could not perform the job now because she has a "really bad back" and legs. (TR 235). She confirmed that physically, she could perform a job that did not require her to be on her feet all day, allowed her to sit down from time to time and work and did not require lifting anything over twenty pounds. (TR 236). She testified that she could not perform this less strenuous work because her concentration is "really bad." (TR 78, 236).

Plaintiff testified that she hears voices that make a roaring sound and tell her to do things, sees devils and demons, feels like somebody is always talking about her, and feels likes someone is watching her when she is in public. (TR 53-55, 238-39). Plaintiff described the things she sees as big and furry with fiery red eyes and long vampire-like teeth and a "globber of slob" running off their chins or looking like a lion. (TR 246). Plaintiff reported that sometimes her "illness tells" her

2

she should not wear any clothes and she reported that she wakes up in the night hearing voices and she sometimes wets the bed or "boo-boos" on herself. (TR 63). She testified that she has heard voices since she was five years old. (TR 239). She testified that she last tried to commit suicide the prior year, by cutting her arm with a razor blade. (TR 241).

Plaintiff testified that she treats at New Passages with a psychiatrist every three months and she sees a case manager every two weeks, which was increased to once a week only a month prior to the hearing. (TR 243). Plaintiff testified that sometimes her "attitude" fluctuates and she gives up and does not take her medications. (TR 244). Plaintiff testified that she stopped using marijuana about one and a half years prior to the hearing and last had a drink "last year." (TR 235).

At the time of the hearing Plaintiff lived with a friend and had two school-aged children who were in her mother's custody. (TR 230-31). Plaintiff testified that she does not have a driver's license because she could not pass the reading and writing portion of the test. (TR 232). Plaintiff also testified that she completed the Daily Activity Sheets in her file and she likes to read "easy" books. (TR 52-54, 233). Plaintiff testified that she does not cook or clean; her friend does it for her and shops for her. (TR 64-65, 71, 248).

The ALJ asked the Vocational Expert (VE) to consider an individual with Plaintiff's age, education and work experience limited to the ability to perform light work, no climbing of ropes, ladders or scaffolds, no driving commercial or industrial vehicles, no exposure to unprotected heights or unguarded hazardous machinery and limited to simple routine tasks in a low stress environment, defined as minimal changes in the work place setting and no more than occasional contact with the general public. (TR 256). The VE testified that such an individual could perform jobs including assembly (reduced to 3,500 in the State of Michigan), packer (reduced to 3,200 in the State of Michigan) and inspector (reduced to 3,300 in the State of Michigan). (TR 257).

The ALJ asked the VE to consider the same individual and limitations with the addition of auditory and visual hallucinations and feelings of paranoia resulting from bipolar and schizophrenic conditions and resulting in the inability to sustain sufficient concentration, persistence and pace to perform even simple, routine tasks on a regular continuing basis of eight hours a day, five days a week. (TR 257). The VE testified that there are no jobs available for such an individual. (TR 258). In response to counsel's questioning, the VE testified that in considering Dr. Browning's medical source statement dated July 30, 2007 there did not appear to be able jobs that such a person could perform. (TR 260). The VE testified that many of the elements assessed on the form are "integral to any type of employment." (TR 261).

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity from the July 31, 2005 application date and suffers from lumbar pain, borderline intellectual functioning, a schizo-affective disorder and a history of substance abuse, yet she does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 13-14). The ALJ found that Plaintiff is able to perform light exertion work limited to no climbing ladders, ropes or scaffolds, no driving commercial vehicles, no exposure to unprotected heights or unguarded hazardous machinery, no more than occasional contact with the general public and limited to performing simple routine tasks in a low stress environment further defined as having minimal changes in the workplace setting. (TR 14). The ALJ concluded that though Plaintiff is not able to perform her past relevant work, she is able to perform a significant number of jobs in the economy and therefore she is not suffering from a disability under the Social Security Act. (TR 14-18).

## V.   LAW AND ANALYSIS

### A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

Plaintiff's Social Security disability determination was made in accordance with the five step sequential evaluation set forth at 20 C.F.R. section 416.920(a)-(g). Plaintiff's physical impairments

are not at issue in her appeal so the analysis below relates to Plaintiff's mental impairments[1]. In her Petition and Response To Order To Show Cause, Plaintiff raises the issue that she received SSI from 2000 to 2006 which was cancelled due to her incarceration. Plaintiff argues that the SSI was improperly cancelled despite the fact that her condition has not changed. (Docket no. 1). Plaintiff also argues that she has been "slandered" by the Social Security Administration and their "doctors," who allegedly based their opinions on the way Plaintiff looks and not her mental impairments. (Docket no. 14).

### B. Discussion and Analysis: Plaintiff's Prior Disability Determination And Subsequent Incarceration

Plaintiff in her Petition alleges that she "use (sic) to receive SSI in 2000 up to 2006" and her benefits were cancelled due to her incarceration. (Docket no. 1 p. 2 of 3). Plaintiff argues that her condition would have to change to cancel SSI and that her condition is the same as it was in 2000 and the only change has been to her medication. (Docket no. 1 p. 2 of 3).

The issue of Plaintiff's prior status collecting SSI is not addressed by the ALJ or Defendant. Although the record lacks specific evidence of the details of any prior period of disability, there is sufficient reference to a prior period of disability, SSI and incarceration to raise the issue. At the hearing the ALJ noted that Plaintiff "received benefits through '04." (TR 237). A Social Security interviewer noted that Plaintiff "was not cooperative due to claimant ssi benefits" having been terminated "due to non pay status." (TR 84). During a February 2006 Psychiatric Evaluation

---

[1] Plaintiff has not raised the issue of physical impairments in any of her pleadings. The Court's full review of the ALJ's decision and the record show that the ALJ's findings with respect to Plaintiff's physical impairments, conditions and related limitations, including those set forth in the RFC, are supported by substantial evidence. The ALJ correctly noted that Plaintiff's allegations of back pain are not supported by objective medical evidence. (Docket no. 15). At the hearing, Plaintiff agreed that she could perform the exertional requirements of the ALJ's RFC. (TR 110, 111, 236).

Plaintiff reported that she was "on disability" until she went to jail for four months. (TR 167). The report and record also show that Plaintiff alleges she started mental treatment after a judge suggested she apply for Supplemental Security Income for her "mental illness." (TR 60).

An incarcerated individual's social security benefits may be suspended as authorized by federal statute. 42 U.S.C. § 402(x)(1)(A)(i) ("no monthly benefits shall be paid under this section or under section 423 of this title to any individual for any month ending with or during or beginning with or during a period of more than 30 days throughout all of which such individual-(i) is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of a criminal offense . . ."). "Under Social Security regulations, 'a claimant's benefits are suspended upon incarceration, and after 12 months of continuous suspension, benefits are terminated.'" *Bonner v. Astrue*, 725 F. Supp. 2d 898, 901 (C.D. Cal. 2010) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1172 (9th Cir.2008)); 20 C.F.R. §§ 416.1325, 416.1335. "However, if a claimant is incarcerated for less than 12 consecutive months, '[b]enefits for which payments have been suspended will be resumed 'effective with the earliest day of the month in which a recipient is no longer a resident of a public institution.''" *Bonner*, 725 F. Supp. 2d at 901 (citing 20 C.F.R. § 416.1325(b)). As in *Bonner*, here the record is ambiguous about the length of Plaintiff's incarceration and whether benefits were suspended or terminated.

There is no evidence that Plaintiff timely requested review of any termination of past benefits or exhausted her administrative remedies with respect to a termination of benefits, and her argument that the Administration should have considered whether her impairment had improved is not the standard for a suspension or termination pursuant to incarceration. *See Tominus v. Astrue*, 2009 WL 35164 * 2 (M.D. Fla. Jan. 6, 2009). Plaintiff's pleadings do, however, provide a basis for

7

considering whether the ALJ should have obtained the prior claims file and considered it as part of the duty to develop a full and fair record. *Id.*

The record shows that Plaintiff underwent an initial mental health examination in April 1999 at Genesee County Mental Health Services after her children were removed from her home and custody. (TR 86-103). At that time, it was reported that Plaintiff was taking Depakote, Cytomel and Zyprexa. (TR 91). The provider noted Plaintiff's report of a history of alcohol and marijuana use yet denied current use. (TR 91). Plaintiff was diagnosed with Bipolar I Disorder, most recent episode, and assigned a GAF of 45. (TR 97, 100). Plaintiff was discharged in January 2000 after she withdrew from treatment. (TR 86). Prior to her discharge she had been admitted to a psychiatric ward for six days to address her substance abuse problem. (TR 86).

The record does not show that Plaintiff sought mental health treatment again until January 19, 2006 when Plaintiff sought treatment at New Passages Behavioral Health and Rehabilitation Services. (TR 175). After the initial assessment, Plaintiff attended counseling from February 2006 through June 2006 and was diagnosed with schizoaffective disorder (295.70). (TR 145-69, 196). Additional medication reviews occurred in January 2006, and on June 5, 2007, July 30, 2007 and January 18, 2008. (TR 199, 206). Throughout this time period Plaintiff was prescribed Depakote and Invega. (TR 213). From February 2008 through June 2008 Plaintiff was interviewed approximately monthly at her home by her case manager (LLBSW). (TR 214, 216). At the June 2008 visit, the case manager reported that upon entry to Plaintiff's apartment, the case manager "smelled a scent that appeared to be the scent of drugs." (TR 214).

Anjana Bhrany, M.D., at New Passages completed a Medical Source Statement dated July 30, 2007. (TR 140-41). Dr. Bhrany opined that Plaintiff's ability to perform most work-related activities was poor or fair at best (fair in 8 of 22 activities) and that Plaintiff's abilities were limited

by a history of visual and oral hallucinations, angry outbursts, and limited social and coping skills. (TR 140-41). He concluded that Plaintiff cannot manage her own benefits. (TR 141).

Plaintiff underwent an agency-ordered psychological evaluation on February 20, 2006 with Nancy Koenig Forbis, Ph.D. (TR 114-23). After extensive evaluation and testing, Dr. Koenig Forbis concluded that Plaintiff's diagnosis was malingering (V65.2) and that Plaintiff's GAF was undeterminable due to malingering. (TR 118). The doctor found that Plaintiff "presents with gross malingering" and "provided no effort on this examination" and concluded that her test scores were a "lowered estimate" of Plaintiff's "current level of intellectual functioning due to a lack of genuine effort." (TR 121, 123). In April 2006, state agency evaluator Laurence Domino, M.D., noted both Plaintiff's diagnosis of schizophrenia and malingering. (TR 124). He concluded that Plaintiff had only mild limitations in activities of daily living, maintaining social functioning and maintaining concentration, persistence and pace and had no episodes of decompensation of extended duration. (TR 134).

It is not evident from the record whether Plaintiff's prior award of SSI was based on a disability, whether there is any relationship to the current claim, and whether the past benefits were suspended or terminated. The missing information is necessary to develop the record to assure that Plaintiff had a full and fair hearing at the administrative level. *See Mimms v. Heckler*, 750 F.2d 180 (2d Cir. 1984). In *Mimms v. Heckler*, the claimant had testified that he had been determined disabled in the past and the "ALJ failed to ask one question of the claimant about his prior disability and its relationship to the disability claim he was now pursuing before the ALJ." *Id*. at 185. The court noted that the "existence of a prior established disability is highly relevant when the nature of that disability appears to be the very same cause of the alleged disability then under examination" and remanded the case. *Id*.; *see also Tominus*, 2009 WL 35164 at *3 (Where the claimant told the

9

ALJ that he had received SSI in the past which was terminated due to his being sent to prison, alleged a "virtual lifetime of mental illness," and there was no indication that Plaintiff's condition had changed, the prior file evidence was "plainly relevant since it would permit . . . a longitudinal evaluation.").

The Court notes the distinction that in *Mimms*, the claimant was not represented by counsel. In the matter at bar, Plaintiff was represented by counsel at the hearing.  The cases are similar, however, in that the issue of the prior collection of benefits from Social Security was left unexplored.  The issue is especially pertinent because the ALJ has relied on Dr. Koenig Forbis's opinion that Plaintiff is malingering to discount Plaintiff's credibility and the ALJ discounted the recent treatment provider's records and opinions of Plaintiff's mental impairments and related mental limitations.

The diagnosis of malingering is serious indeed.  A diagnosis of malingering undermines Plaintiff's credibility regarding her limitations.  *See Alaali v. Astrue*, 2010 WL 3893925 at *5 (D. Idaho Sept. 30, 2010).  The record, however, has an evidentiary gap regarding Plaintiff's past SSI benefits and history of mental health treatment.  The significance of these missing records to any final determination of Plaintiff's claim is underscored where the ALJ discounted Dr. Bhrany's opinion and relied on this non-treating diagnosis of malingering.  For this reason, the Court cannot conclude that substantial evidence supports the ALJ's decision.  The Court should remand the action so the Commissioner can obtain and consider the claim file for the past award of SSI.  Having reached this conclusion, the Court need not address Plaintiff's additional claims, "none of which would provide plaintiff greater relief than granted herein."  *Bonner*, 725 F. Supp. 2d at 902 n.4.

## VI.    CONCLUSION

The ALJ's decision should be reversed and the matter remanded for further consideration as set forth herein. Plaintiff's Motion for Summary Judgment (docket no. 1, 14) should be GRANTED in part and DENIED in part, Defendant's Motion for Summary Judgment (docket no. 15) should be DENIED and the instant matter remanded.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: March 22, 2011            s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

11

I hereby certify that a copy of this Report and Recommendation was served upon Tamia Bragg and Counsel of Record on this date.

Dated: March 22, 2011         s/ Lisa C. Bartlett
                              Case Manager